IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Ceres Communications Technologies, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-855 (JCJ) |
| | ) | |
| 8x8, Inc.; AT&T Inc.; Atlantic Broadband Finance, LLC; Bright House Networks, LLC; Charter Communications Holding Company, LLC; Charter Communications, Inc.; Comcast Corporation; Cox Communications, Inc.; CSC Holdings LLC; Insight Communications Company, Inc.; Knology, Inc.; Mediacom Broadband LLC; OfficeMax Incorporated; RCN Corporation; San Juan Cable LLC; Skype Global S.à.r.l.; Skype Inc.; Time Warner Cable Inc.; Verizon Communications Inc.; Vonage Holdings Corp.; Vonage America Inc.; and Vonage Marketing LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SKYPE INC.'S REPLY BRIEF
IN SUPPORT OF ITS MOTION FOR DISQUALIFICATION
OF RUSS AUGUST & KABAT AS COUNSEL FOR
CERES COMMUNICATIONS TECHNOLOGIES, LLC**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

*Attorneys for Skype Inc.*

OF COUNSEL:

Henry B. Gutman
Kerry L. Konrad
Victor Cole
Courtney A. Welshimer
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017-3954
(212) 455-2000

May 26, 2011

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ii

I.      INTRODUCTION ............................................................................................1

II.     REPLY TO COUNTER-STATEMENT OF FACTS ...........................................1

III.    ARGUMENT .....................................................................................................3

      A.      Skype Has No Burden to Demonstrate That an Actual
           Breach of Confidence Has Occurred ..........................................................3

      B.      RAK Failed to Provide Notice As Required By Model Rule
           1.10(a)(2)(ii) ................................................................................................5

           1.      RAK's Notice to Skype, If Any, Was Not "Prompt" ....................6

           2.      RAK's Response Was Inadequate Notice Under the
                Model Rules .....................................................................................6

IV.     CONCLUSION ...................................................................................................7

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Apeldyn Corp. v. Samsung Electronics Co., Ltd.*,
  660 F. Supp. 2d 557 (D.Del. 2009), mandamus *denied*, Misc. No. 934, 2010 WL
  3035485 (Fed. Cir. Aug. 2, 2010) ........................................................................................4

*Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.*,
  632 F. Supp. 418 (D. Del. 1986) ..................................................................................... 4-5


OTHER AUTHORITIES

MODEL RULES OF PROF'L CONDUCT R. 1.10 ..................................................................... passim

## I.      INTRODUCTION

In its Answering Brief, RAK argues that Skype's Motion must be denied because it cannot prove that either of the two RAK lawyers who previously represented Skype—Messrs. Weiss and Wang—has actually disclosed Skype's confidences to colleagues who are currently representing Ceres in this Action.  *See* D.I. 189 (the "Answering Brief") at 9, 14-15.[1]  RAK's argument misses the mark, as Skype bears no such burden.  Even if RAK "isolated" Messrs. Weiss and Wang from participation in this case in an effective and timely manner—and it did not —the issue is whether, under all of the circumstances presented here, RAK can continue to represent Ceres against Skype without creating an unfair and improper risk of inadvertent disclosure of Skype's confidences.  It cannot.  RAK failed to recognize the seriousness of its ethical obligations or to address Skype's concerns in a forthright manner; RAK continues to refuse to acknowledge the applicability of this Court's ethical rules to the conduct of the attorneys involved; and, even in the face of this Motion, RAK refuses to comply with the explicit requirements of those rules concerning notice to Skype.

Accordingly, for the reasons set forth below and in the Opening Brief, Skype respectfully requests that RAK be disqualified from representing Ceres against Skype in this action.

## II.     REPLY TO COUNTER-STATEMENT OF FACTS

RAK contests none of the essential facts relevant to this Motion.  *First*, RAK concedes that this Action is substantially related to Messrs. Weiss and Wang's prior

---

[1]      Unless otherwise defined, all capitalized terms have the same meaning as in Defendant Skype Inc.'s Opening Brief in Support of Its Motion For Disqualification of Russ August & Kabat as Counsel For Ceres Communications Technologies, LLC (the "Opening Brief").  D.I. 181.

representation of Skype in the *Net2Phone* and *Peer* cases.  Although RAK initially told Skype that, in RAK's view, Messrs. Weiss and Wang "would not be precluded from working" on this matter because "the cases are not substantially related" (D.I. 189, Ex. 5), RAK now appears to have abandoned this position and dismisses the issue as irrelevant.  *See* D.I. 189 at 10, 12.

       *Second*, RAK does not claim to have provided any form of notice to Skype at any time before Skype raised the conflict issue on its own initiative.  RAK concedes that it did not give notice in August 2010, when it claims to have first learned of Mr. Weiss' conflict and determined that Mr. Weiss should be "isolated" from this case (D.I. 189 at 3); in October 2010, when it commenced this Action against Skype; or in January 2011, when Mr. Wang joined RAK and was similarly "isolated" (according to RAK) from this case.  D.I. 189 at 4; *see* D.I. 181, Ex. 5.  RAK now claims that its letters refusing to honor Skype's request to withdraw constituted "notice" (D.I. 189 at 15), but it makes no effort to demonstrate that those letters complied with the exacting requirements of the rule.

       *Third*, RAK denies neither the extent nor substantive nature of Messrs. Weiss and Wang's prior representation of Skype.  RAK concedes that the two attorneys together billed more than 6,300 hours for their work on the *Net2Phone* and *Peer* cases; that each was involved in numerous aspects of *those* cases, including the review and production of Skype's internal documents, the negotiation of discovery disputes on Skype's behalf, and settlement; and that each was exposed to Skype's privileged and confidential business and technical information in the course of their work for Skype.  *See* D.I. 181 at 7-9.  Although RAK now tries to downplay Messrs Weiss and Wang's involvement, it challenges none of the material facts.

       *Lastly*, RAK does not contest that it has "approximately two-dozen lawyers" (D.I. 189 at 14; D.I. 193 ¶ 11); that its IP Group consists of thirteen lawyers, including Messrs.

- 2 -

Weiss and Wang; or that all of the lawyers in the IP Group work together in its Los Angeles office.

At the same time, the vague chronology of events RAK puts forward raises as many questions as it answers. When, exactly, did Ceres retain RAK? *See* D.I. 189 at 3. On what date did the conversation occur in which Mr. Weiss's conflict was supposedly first discovered? *See id.*; D.I. 190 ¶ 5; D.I. 195 ¶ 3. When did Mr. Kuyper, Ceres' counsel of record, begin work on the case, and when exactly did he learn of Mr. Weiss's conflict? *See* D.I. 192 ¶ 5; D.I. 189 at 4. RAK's declarants either cannot, or will not, say.

Indeed, RAK's submissions indicate that none of the other RAK attorneys or personnel who worked on this matter were informed of the conflict prior to the circulation of a screening memorandum on March 29, 2011 (the "March 29 Memo"), weeks after Skype requested RAK's withdrawal. This record bespeaks, at best, RAK's casual and begrudging approach towards its ethical obligations and serves only to heighten Skype's concerns concerning RAK's future compliance with those obligations.

## III.   ARGUMENT

### A.   Skype Has No Burden to Demonstrate That an Actual Breach of Confidence Has Occurred

RAK's argument, stripped to its essentials, rests on the erroneous premise that, "Absent evidence of lawyer ethical non-compliance, the motion 'must be denied.'" D.I. 189 at 9; *see id.* at 14. This is not the law. RAK can cite no case – because there is none – holding that a former client bears the burden of proving that an actual disclosure of confidential information has already occurred before it can invoke the protection of the Model Rules. To the contrary, the Rules are intended to be prophylactic in nature, and are aimed at *preventing* situations from arising in which any such breach of confidence can occur.

For this reason, courts considering motions to disqualify weigh all of the relevant circumstances, whether or not a breach has been shown and even when a screening mechanism has been adopted.  *See Apeldyn Corp. v. Samsung Electronics Co., Ltd.*, 660 F. Supp. 2d 557, 561 (D.Del. 2009), mandamus *denied*, Misc. No. 934, 2010 WL 3035485 (Fed. Cir. Aug. 2, 2010); *Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.*, 632 F. Supp. 418, 428 (D. Del. 1986); MODEL RULES OF PROF'L CONDUCT R. 1.10 cmt. 7.

RAK's attempt to distinguish *Apeldyn* is similarly misguided.  RAK asserts that *Apeldyn* "turns legally on the court's rejection of the new firm's insistence that the cases were not substantially related, and … on the new firm's refusal, even after the conflict was made apparent, to isolate the lawyer and its instead continuing his standing as counsel of record."  D.I. 189 at 10. Like the disqualified law firm in *Apeldyn*, however, RAK also insisted that the *Net2Phone* and *Peer* cases and this Action "are not substantially related" when Skype raised its concerns.  And, like the disqualified firm in *Apeldyn*, RAK refused to provide Skype with specific information regarding its alleged "isolation" of Messrs. Weiss and Wang and "did not ***formally*** wall [the conflicted attorney] off" (*id.*) until RAK's circulation of the March 29 Memo.  Moreover, the firm in *Apeldyn* was disqualified despite the fact that the conflicted attorney "ha[d] not recorded any billable time to th[e] case."  *See Apeldyn*, 660 F. Supp. 2d at 562.

In sum, the factual circumstances here present a sufficiently serious risk of inadvertent disclosure to require disqualification under *Apeldyn* and other relevant authorities.   This Court need not, and should not, wait for the horse to leave the barn before determining, as a matter of professional ethics and basic fairness, that the door should be permanently closed.

- 4 -

**B.      RAK Failed to Provide Notice As Required By Model Rule 1.10(a)(2)(ii)**

RAK asserts that "notice is only one of many potential factors under applicable case law." D.I. 189 at 15.  RAK misapprehends the applicable rule.  The provision of notice to a former client is an explicit requirement under Rule 1.10:

> ***written notice*** [must be] ***promptly given*** to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule, ***which shall include a description of the screening procedures employed; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures . . . .***

MODEL RULES OF PROF'L CONDUCT R. 1.10(a)(2)(ii) (emphasis added).[2]  The comments to Model Rule 1.10 provide additional guidance and insight into the purpose behind the notice provision:

> The notice required by paragraph (a)(2)(ii) generally should include a ***description of the screened lawyer's prior representation*** and ***be given as soon as practicable after the need for screening becomes apparent.*** It also should include a statement by the ***screened*** lawyer and the firm that the client's material confidential information has not been disclosed or used in violation of the Rules. ***The notice is intended to enable the former client to evaluate and comment upon the effectiveness of the screening procedures.***

MODEL RULES OF PROF'L CONDUCT R. 1.10(a)(2)(ii) cmt. 9 (emphasis added).  Although RAK states that "notice of the isolation of Messrs. Weiss and Wang was promptly given to Skype

---

[2]      The current version of Model Rule 1.10 was adopted by the ABA in 2009.  Thus, its notice requirement was not in force when the *Nemours* case was decided in 1986.  *See Nemours*, 632 F. Supp. at 424-25.

through its counsel" (D.I. at 3), that purported "notice" falls woefully short of compliance with the explicit requirements of this Rule.

1.      **RAK's Notice to Skype, If Any, Was Not "Prompt"**

In its Answering Brief, RAK states that it learned of Mr. Weiss' conflict in August 2010 and determined that, due to his prior representation of Skype, it was necessary to "isolate" him from the potential matter that later became this Action.  D.I. 189 at 3-4; D.I. 190 ¶¶ 5.  Although the conflict was already apparent to RAK, it did not notify Skype.  Nor did it give notice to Skype when it commenced this Action in October 2010, or even after Mr. Wang joined RAK in late January 2011 and RAK determined that he should also be "isolated" from this Action.  D.I. 189 at 4; D.I. 190 ¶ 8.

Only after Skype, through its counsel, raised the conflict issue with RAK in February 2011 did RAK tell Skype that Messrs. Weiss and Wang had been "isolated" from this Action.  *See* D.I. 181, Exs. 3, 5; D.I. 189 at 15.  Even if RAK's response, provided more than five months after the potential conflict became apparent, can be seen as "notice," it was certainly not "prompt."[3]

2.      **RAK's Response Was Inadequate Notice Under the Model Rules**

Nor did RAK's response satisfy the explicit requirements for notice set forth in Model Rule 1.10(a)(2)(ii):

- It did not provide a description of the screening procedures RAK had employed to protect Skype's confidential information.  *See* D.I. 181, Exs. 3, 5.

---

[3]      RAK states that, "***At the absolute latest***, it gave notice to Skype by Mr. Kabat's February 11, 2011 letter to its counsel Mr. Cole" (D.I. 189 at 15 (emphasis added)), but it fails to proffer anything to show when, if ever, it contacted Skype or Skype's counsel regarding its conflict prior to that letter.

- It did not include a statement regarding RAK's or Messrs. Weiss and Wang's compliance with the Model Rules and, in fact, denied that the Model Rules govern RAK's conduct in this Action. *See id.*[4]

- It did not include a statement that review may be available before a tribunal. *See id.*

- It did not include an agreement to respond promptly to written inquiries. *See id.* To the contrary, RAK refused to provide Skype with the March 29 Memo or any other meaningful description of how and when it employed screening procedures in connection with this matter until it served its Answering Brief. *See* D.I. 189, Ex. F.

The purpose of the Rule is to "enable the former client to ascertain compliance with the provisions of [Model Rule 1.10(a)(2)(ii)]" and "evaluate and comment on the effectiveness of screening procedures." MODEL RULES OF PROF'L CONDUCT R. 1.10(a)(ii); *id.* cmt. 9. RAK's purported "notice" failed to meet that purpose. Its refusal, even now, to honor the explicit requirements of the Rule is, standing alone, sufficient ground to require its disqualification here.

## IV.    CONCLUSION

For the foregoing reasons, and the reasons set forth in the Opening Brief, Skype respectfully requests that the Court grant the Motion and enter an Order disqualifying RAK from further representation of Ceres against Skype in this Action.

---

[4]     In the communications before the Motion was filed, RAK asserted that California law, not the Model Rules, governs its conduct in this Action. *See* D.I. 181, Ex. 5. In its Answering Brief, RAK continues to question whether the Model Rules apply to Messrs. Weiss and Wang. D.I. 189 at 5 n.4, 15-16.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

*Attorneys for Skype Inc.*

OF COUNSEL:

Henry B. Gutman
Kerry L. Konrad
Victor Cole
Courtney A. Welshimer
SIMPSON THATCHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017-3954
(212) 455-2000

May 26, 2011
4285771

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2011, I caused the foregoing to be electronically

filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

Richard D. Kirk, Esquire
Stephen B. Brauerman, Esquire
BAYARD, P.A.

Steven J. Balick, Esquire
Lauren E. Maguire, Esquire
Caroline Hong, Esquire
ASHBY & GEDDES

Jeffrey L. Moyer, Esquire
Kelly E. Farnan, Esquire
RICHARDS, LAYTON & FINGER, P.A.

John M. Seaman, Esquire
ABRAMS & BAYLISS LLP

Frederick L. Cottrell, II, Esquire
Anne Shea Gaza, Esquire
RICHARDS, LAYTON & FINGER, P.A.

Richard L. Horwitz, Esquire
David E. Moore, Esquire
POTTER ANDERSON & CORROON LLP

Collins J. Seitz, Jr., Esquire
Chad S.C. Stover, Esquire
CONNOLLY BOVE LODGE AND HUTZ LLP

I further certify that I caused copies of the foregoing document to be served on

May 26, 2011, upon the following in the manner indicated:

Richard D. Kirk, Esquire                        *VIA ELECTRONIC MAIL*
Stephen B. Brauerman, Esquire
BAYARD, P.A.
222 Delaware Avenue
Suite 900
Wilmington, DE  19801
*Attorneys for Ceres Communications*
*Technologies, LLC*

Marc A. Fenster, Esquire                        *VIA ELECTRONIC MAIL*
Bruce D. Kuyper, Esquire
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard
12th Floor
Los Angeles, CA  90025-1031
*Attorneys for Ceres Communications*
*Technologies, LLC*

Frederick L. Cottrell, II, Esquire                    *VIA ELECTRONIC MAIL*
Anne Shea Gaza, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for CSC Holdings LLC*


Benjamin Hershkowitz, Esquire                    *VIA ELECTRONIC MAIL*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
*Attorneys for CSC Holdings LLC*


Steven J. Balick, Esquire                    *VIA ELECTRONIC MAIL*
Lauren E. Maguire, Esquire
Caroline Hong, Esquire
ASHBY & GEDDES
500 Delaware Avenue – 8th Floor
Wilmington, DE  19801
*Attorneys for Charter Communications*
*Holding Company, LLC, Charter*
*Communications, Inc., Mediacom Broadband*
*LLC and Atlantic Broadband Finance, LLC*


Jeffrey H. Dean, Esquire                    *VIA ELECTRONIC MAIL*
Kevin D. Hogg, Esquire
Scott Sanderson, Esquire
Sarah K. Kalemeris, Esquire
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL  60606-6357
*Attorneys for Charter Communications*
*Holding Company, LLC and Charter*
*Communications, Inc.*


Mitchell D. Lukin, Esquire                    *VIA ELECTRONIC MAIL*
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana Street
Houston, TX  77002-4995
*Attorneys for Mediacom Broadband LLC and*
*Atlantic Broadband Finance, LLC*

Patrick J. Flinn, Esquire       *VIA ELECTRONIC MAIL*
Angela Payne-James, Esquire
Matthew W. Howell, Esquire
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3449
*Attorneys for Knology, Inc.*

Vaibhav P. Kadaba, Esquire      *VIA ELECTRONIC MAIL*
Mitchell G. Stockwell, Esquire
Wilson L. White, Esquire
Taylor Higgins Ludlam, Esquire
KILPATRICK TOWNSEND & STOCKTON, LLP
1100 Peachtree Street
Suite 1100
Atlanta, GA  30309
*Attorneys for Cox Communications, Inc.*

Richard L. Horwitz, Esquire      *VIA ELECTRONIC MAIL*
David E. Moore, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza – 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for 8x8, Inc., OfficeMax*
*Incorporated and AT&T Inc.*

Robert J. Crawford, Esquire      *VIA ELECTRONIC MAIL*
CRAWFORD MAUNU PLLC
1150 Northland Drive
Suite 100
Saint Paul, MN  55120
*Attorneys for 8x8, Inc. and OfficeMax*
*Incorporated*

Kenneth R. Breitbeil, Esquire     *VIA ELECTRONIC MAIL*
MCFALL, BREITBEIL & SHULTS, P.C.
1250 Four Houston Center
1331 Lamar Street
Houston, TX  77010-3027
*Attorneys for Office Max Incorporated*

Adam V. Floyd, Esquire                                          *VIA ELECTRONIC MAIL*
Arthur Gollwitzer II, Esquire
F&B LLP
5113 Southwest Parkway
Suite 140
Austin, TX  78735
*Attorneys for AT&T Inc.*

Jeffrey L. Moyer, Esquire                                       *VIA ELECTRONIC MAIL*
Kelly E. Farnan, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Time Warner Cable Inc., Bright*
*House Networks, LLC and Insight*
*Communications Company, Inc.*

David S. Benyacar, Esquire                                      *VIA ELECTRONIC MAIL*
Daniel L. Reisner, Esquire
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022
*Attorneys for Time Warner Cable Inc., Bright*
*House Networks, LLC and Insight*
*Communications Company, Inc.*

Collins J. Seitz, Jr., Esquire                                  *VIA ELECTRONIC MAIL*
Chad S.C. Stover, Esquire
CONNOLLY BOVE LODGE AND HUTZ LLP
1007 North Orange Street
Wilmington, DE  19801
*Attorneys for Vonage Holdings Corp.; Vonage*
*America Inc. and Vonage Marketing LLC*

William F. Lee, Esquire                                         *VIA ELECTRONIC MAIL*
Michael J. Summersgill, Equire
WILMERHALE
60 State Street
Boston, MA  02109
*Attorneys for Vonage Holdings Corp.; Vonage*
*America Inc. and Vonage Marketing LLC*

Brian L. Ferrall, Esquire                                   *VIA ELECTRONIC MAIL*
Lisa C. Ehrlich, Esquire
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA  94111
*Attorneys for Comcast Corporation*

Tracy G. Weiss, Esquire                                     *VIA ELECTRONIC MAIL*
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103
*Attorneys for Comcast Corporation*

John M. Seaman, Esquire                                     *VIA ELECTRONIC MAIL*
ABRAMS & BAYLISS LLP
20 Montchanin Road
Suite 200
Wilmington, DE  19807
*Attorneys for RCN Corporation*

Richard P. Gilly, Esquire                                   *VIA ELECTRONIC MAIL*
Rhett E. Petcher, Esquire
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC  20004
*Attorneys for RCN Corporation*

John C. Phillips, Jr., Esquire                              *VIA ELECTRONIC MAIL*
Megan C. Haney, Esquire
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE  19806
*Attorneys for Verizon Communications Inc.*

Charles B. Molster III, Esquire                             *VIA ELECTRONIC MAIL*
Monika M. Blacha, Esquire
WINTSON & STRAWN LLP
1700 K Street, N.W.
Washington, DC  20006
*Attorneys for Verizon Communications Inc.*

/s/ Rodger D. Smith II
_____
Rodger D. Smith II (#3778)

- 5 -